```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

```
BARBARA HUNT-WATKINS,                }
                                     }
               Plaintiff,             }
                                     }
v.                                   }
                                     }
DARDEN RESTAURANTS, INC., and        }   NO:  2:08-cv-02539-JPM-tmp
GMRI, INC., individually and doing   }
business as BAHAMA BREEZE 3003       }
RESTAURANT, a proprietorship,        }
corporation, partnership, limited    }
liability company, or                }
unincorporated association,          }
                                     }
               Defendants.           }
```

**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO LIABILITY AND DAMAGES**

Before the Court is Defendant Darden Restaurants, Inc. and Defendant GMRI, Inc., d/b/a Bahama Breeze 3003 Restaurant's Motion for Summary Judgment as to Liability (Docket Entry ("D.E.") 55) and Motion for Summary Judgment as to Damages (D.E. 54), filed March 15, 2010. Plaintiff Barbara Hunt-Watkins filed responses in opposition on April 2, 2010. (D.E. 60 & 61.) For the following reasons, Defendants' motions are DENIED.

**I.   Background**

This is a premises liability case stemming from a fall by Plaintiff Barbara Hunt-Watkins ("Plaintiff") on July 28, 2007. (Defs.' Statement of Undisputed Material Facts (D.E. 55-1)

("Defs.' Statement of Facts – Liability") ¶ 1.)  Plaintiff alleges that while she was walking on a sidewalk outside the Bahama Breeze restaurant located at 2830 North Germantown Parkway in Memphis, Tennessee ("Memphis Bahama Breeze Restaurant") she tripped over the "edging of [a] protrusive piece of concrete."  (Id. ¶ 2; Hunt-Watkins Dep. at 15.)  Plaintiff testified that there was a "joint" between two slabs of concrete where a piece of concrete was "sticking up." (Defs.' Statement of Facts – Liability ¶ 2; Hunt-Watkins Dep. at 59.)  Plaintiff contends that her left foot caught the protruding piece of concrete and caused her to fall.  (Hunt-Watkins Dep. at 57-59.)

On July 29, 2007, the day after Plaintiff's fall, Plaintiff's son Wendall Abbott visited the Memphis Bahama Breeze Restaurant.  (Abbot Dep. at 62-63.)  Abbott testified that he took multiple photographs of the sidewalk at issue.  (Id.) Plaintiff retained Richard A. Rice, P.E., C.S.P., C.F.E.I., to testify as an expert witness.  After examining the photographs taken by Abbott, Rice concluded that the difference in elevation between the concrete slabs that Plaintiff allegedly tripped on was greater than one-fourth of an inch.  (Pl.'s Statement of Additional Undisputed Material Facts as to Liability (D.E. 60-2) ¶ 5; Rice Dep. at 101.)  Rice also testified that such a differential constitutes a safety code violation and creates a

2

"dangerous or hazardous condition to a person." (Rice Dep. at 89-90.)

In addition to examining the photographs taken by Abbot, Rice visited the Memphis Bahama Breeze Restaurant on March 11, 2009 to examine the sidewalk in person. Rice testified that on that day no dangerous or defective condition existed. (Defs.' Statement of Facts – Liability ¶ 4.) Rice, however, also testified that in his opinion the sidewalk was repaired since the date of Plaintiff's alleged fall. (Id. ¶ 6.) Specifically, Rice testified that he believes entire sections of the sidewalk had been "cut out and replaced." (Rice Dep. at 69.) Plaintiff also testified that she visited the Memphis Bahama Breeze Restaurant after her fall and that the condition of the sidewalk "had been changed." (Hunt-Watkins Dep. at 33.)

At the deposition of Gera Stiles, assistant manager at the Memphis Bahama Breeze Restaurant, Stiles was asked whether the sidewalk in front of the restaurant was repaired in "the last year or two." (Stiles Dep. at 18.) Stiles responded, "to my knowledge, they've never been repaired anywhere in the front since we've been open."[1] (Id.) Charles Billings, the general manager of the Memphis Bahama Breeze Restaurant,[2] testified that

---

[1] The Memphis Bahama Breeze Restaurant opened in 1998. (Stiles Dep. at 6.)

[2] Billings has been employed in some capacity with the Memphis Bahama Breeze Restaurant since October 2002. (Billings Dep. at 7.) On July 28,

3

since July 28, 2007 no repairs or modifications had been made to the sidewalk in the front of the restaurant. (Billings Dep. at 19-20.)

Curtis Sawan, the facilities manager for Defendant Darden Restaurants, Inc., testified that he oversees all maintenance and repairs at the Memphis Bahama Breeze Restaurant. (Sawan Aff. (D.E. 55-8) ¶¶ 1-2.) Sawan stated that as the facilities manager, "any replacement of the concrete slabs in the sidewalk at the [Memphis] Bahama Breeze location would come through [him] for contract." (Id. ¶ 3.) Sawan testified that he reviewed the Facilities Audit Reports related to the Memphis Bahama Breeze Restaurant dating from July 30, 2003 to November 6, 2009 and no repairs were made to the sidewalk at issue during this period. (Id. ¶¶ 5-7). Sawan also testified that to his knowledge, no repairs to the sidewalk in front of the Memphis Bahama Breeze Restaurant were made after July 28, 2007. (Id. ¶ 8.)

### II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

2007, however, Billings was not the General Manager of the Memphis Bahama Breeze Restaurant. (Id. at 20.)

judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

5

**III. Analysis**

Defendants move for summary judgment as to liability and damages. The Court will address each contention in turn.

**A.   Liability**

In order for a plaintiff to prevail on a claim of negligence, she must prove each of the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 894 (Tenn. 1996) (citing McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)). "Where a negligence claim is made in the premises liability context, Tennessee courts have stated [that] a business owner owes a duty of reasonable care under all the attendant circumstances to all persons who come upon his property with his consent, express or implied." Johnson v. Wal-Mart Stores East, L.P., No. 1:08-CV-67, 2009 WL 540213, at *5 (E.D. Tenn. Mar. 4, 2009) (citations and internal quotation marks omitted).

The duty of care is breached by a business owner "when it allows a dangerous condition or defect to exist on the premises if that condition or defect was created by the owner, operator, or his agent; or if the condition is created by someone else, when the business owner had actual or constructive notice that

6

the dangerous condition or defect existed prior to the injury." <u>Morris v. Wal-Mart Stores, Inc.</u>, 330 F.3d 854, 858 (6th Cir. 2003) (<u>citing</u> <u>Hardesty v. Serv. Merch. Co.</u>, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997)).  Thus, Tennessee law is clear that "for an owner or occupier to be found negligent, there must be some evidence that there was a dangerous or defective condition on the premises."  <u>Nee v. Big Creek Partners</u>, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002).  "A jury cannot conclude that an owner or occupier failed to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition."  <u>Id.</u> at 653-54.

In the instant case, Defendants contend they are entitled to summary judgment because Plaintiff failed to produce evidence that a dangerous or defective condition existed.  In support of this contention, Defendants focus on the testimony of Richard Rice, Charles Billings, Gera Stiles, and Curtis Sawan.  Rice, Plaintiff's expert witness, testified that on March 11, 2009 the sidewalk at issue was not in a dangerous or defective condition. Stiles, Billings, and Sawan, all employees of Defendants, each testified that no repairs had been made to the sidewalk during the period between July 28, 2007 and March 11, 2009.  Defendants thus argue that the aforementioned testimony precludes any argument that the sidewalk was in a defective or dangerous condition on July 28, 2007.

7

Plaintiff, on the other hand, argues that material evidence exists that would allow a reasonable person to conclude that the sidewalk at the Memphis Bahama Breeze Restaurant was in a dangerous or defective condition.  Rice testified that the difference in elevation between the slabs of concrete on which Plaintiff allegedly tripped was greater than one-fourth of an inch and constituted a "tripping/fall hazard."  (D.E. 55-13 at 3.)  The methodology Rice employed in reaching this conclusion was the process of "triangulation."  (Rice Dep. at 78.)  Rice, however, did not employ any form of triangulation typically utilized in the fields of trigonometry and geometry.  Rather, Rice testified that he used a "rough" form of triangulation which Rice stated was simply "a fancy word for . . . looking at photographs."  (Rice Dep. at 79, 97.)

The Court finds that Rice's testimony is not sufficient to put the issue of whether the sidewalk was in a dangerous or defective condition to the jury.  It is undisputed that Rice is qualified as an expert in the field of civil engineering.  The Court is not convinced, however, that Rice's engineering training gives him the skill to examine a photograph and estimate elevation differentials within a fraction of an inch with his naked eye.  In other words, Rice's conclusion regarding the elevation differential between the concrete slabs is not "the product of reliable principles and methods."  <u>See</u> Fed. R.

8

Evid. 702. In the absence of some reliable methodology upon which Rice bases his conclusion, his testimony regarding the elevation differential between the concrete slabs is no different than that of an untrained layperson.

Alternatively, Plaintiff contends that material evidence exists that would allow a reasonable person to conclude that the sidewalk at issue was repaired or replaced after July 28, 2007. Plaintiff thus argues that because a fact question exists regarding repairs to the sidewalk, a fact question also exists as to whether the sidewalk was in a dangerous or defective condition on July 28, 2007.[3]

In support of this contention, Plaintiff directs the Court to her deposition testimony. Plaintiff testified that she returned to the Memphis Bahama Breeze Restaurant after her fall on July 28, 2007 and that the portion of the sidewalk at issue had changed:

> Q.: How did you learn before today that the sidewalk had been changed, at least according to your testimony?
>
> Plaintiff: Okay. I learned that it had changed because one of my colleagues was leaving our job area and was going to a new job, and I was invited to come to a celebration of her going to a new job at Bahama Breeze.

---

[3] In the instant case, the Court finds that evidence regarding repairs is not barred by Federal Rule of Evidence 407. That is because Defendants' position is that the sidewalk was *not* repaired or replaced after Plaintiff's fall. If the Court were to find Plaintiff's evidence inadmissible under Rule 407, it would allow Defendants to benefit from inconsistent positions and such a result would frustrate the purpose of the rule.

9

> Q.: Okay. And so you went to the Bahama Breeze, and you saw that the sidewalk had been changed?
>
> Plaintiff: Yes.
>
> Q.: Okay. So this is based upon your own personal observation, not on anything anyone told you?
>
> Plaintiff: Exactly.

(Hunt-Watkins Dep. at 32-33.) Later in her deposition, Plaintiff was shown photographs of the sidewalk taken by Rice on March 11, 2009. After observing the photographs, Plaintiff testified that the sidewalk she observed on July 28, 2007 and the sidewalk in the photograph were in different conditions. (Id. at 33-36.) Specifically, Plaintiff testified that that the sidewalk in the photograph no longer contained a protruding piece of concrete in the area where she fell. (Id. at 35.)

Viewing the evidence in the light most favorable to the Plaintiff as the non-moving party, the Court finds that Plaintiff's testimony regarding the changed conditions of the sidewalk is sufficient to create a fact question as to (1) whether the sidewalk was repaired or replaced after Plaintiff's fall, and (2) whether the sidewalk was in a dangerous or defective condition on July 28, 2007.[4] Defendants' Motion for Summary Judgment as to liability is DENIED.

---

[4] Because the Court finds Plaintiff's testimony sufficient to preclude summary judgment, the Court issues no opinion at this time as to the

10

### B. Damages

In the damages context, Defendants argue that should Plaintiff establish liability, the Court should find as a matter of law that due to Plaintiff's pre-existing osteoarthritis, (1) any recovery for Plaintiff's injury to her left knee should be limited to twenty percent (20%) of her claimed damages, and (2) Plaintiff should be precluded from recovering damages for any injury to Plaintiff's right knee.

When a plaintiff has a pre-existing medical condition, "[she] can recover for an increase in disability resulting from an accident, but not for her total disability resulting from the pre-existing condition plus the aggravation caused by the accident." McMurry v. Metro. Gov't of Nashville, No. M2000-02902-COA-R3-CV, 2003 WL 535918, at *7 (Tenn. Ct. App. Feb. 26, 2003) (citing Kincaid v. Lyerla, 680 S.W.2d 471, 473 (Tenn. Ct. App. 1974)).  In other words, although a plaintiff is entitled to recover for all injuries proximately caused by the acts of a tortfeasor, "when a plaintiff's 'injuries are aggravated or activated by a pre-existing physical or mental condition, [the] defendant is liable only to the extent that his wrongful act proximately and naturally aggravated or activated plaintiff's

---

reliability of Rice's testimony regarding his opinion that the sidewalk at issue was repaired or replaced after July 28, 2007.

condition.'"  Id. (quoting Haws v. Bullock, 592 S.W.2d 588, 591 (Tenn. Ct. App. 1984)).

### 1. Left Knee

In the instant case, it is undisputed that Plaintiff suffered from osteoarthritis in her left knee prior to her fall on July 28, 2007.  (Pls.' Resp. to Defs.' Statement of Facts – Damages (D.E. 61-2) ¶ 3.)  Plaintiff's treating physician, Dr. Jean Simard, estimated that twenty percent (20%) of the injury to Plaintiff's left knee was attributable to Plaintiff's fall.  (Id. ¶ 13.)  Defendants thus argue that they are entitled to a ruling that Plaintiff's recovery be limited to twenty percent (20%) of her claimed damages.  The Court disagrees.

Under Tennessee law, the apportionment of damages is a question of fact of which a determination is not appropriate at the summary judgment stage.  See McMurry, 2003 WL 535918, at *7 ("Where possible, the *factfinder* must apportion the amount of disability and pain between that caused by the pre-existing condition and that caused by the accident." (emphasis added) (citing Haws, 592 S.W.2d at 591)); see also Myers v. Myers, No. E2004-02135-COA-R3-CV, 2005 WL 1521952, at *2 (Tenn. Ct. App. June 27, 2005) ("The issue of damages is primarily for the jury." (citing Bates v. Jackson, 639 S.W.2d 925, 927 (Tenn.

12

1984)).  The Court therefore declines to rule on the apportionment of damages at this time.[5]

### 2.   Right Knee

It is also undisputed that Plaintiff suffered from osteoarthritis in her right knee prior to her fall on July 28, 2007.  (Pls.' Resp. to Defs.' Statement of Facts – Damages ¶ 3.)  Dr. Simard testified that in his opinion any injury to Plaintiff's right knee was not related to Plaintiff's fall but rather was attributable solely to Plaintiff's pre-existing osteoarthritis.  (Simard Dep. at 80-82.)  Defendants argue that in light of Dr. Simard's testimony, Plaintiff should be precluded at trial from asserting that any injury to her right knee was attributable to her July 28, 2007 fall.

Plaintiff, however, has presented testimony from Dr. Shearest Crenshaw, Plaintiff's primary care physician, that prior to Plaintiff's fall, Plaintiff had neither received treatment for her osteoarthritis nor experienced pain in her right knee.  (Crenshaw Dep. at 11.)  Moreover, Dr. James Varner, Defendants' medical expert, testified that the injury to Plaintiff's left knee could have caused Plaintiff to place a disproportionate amount of weight on her right knee resulting in an aggravation of Plaintiff's osteoarthritis.  (Varner Dep. at

---

[5]   At trial, because Plaintiff does not dispute the existence of her pre-existing osteoarthritis, the jury will receive the proper jury instruction regarding the aggravation of a pre-existing condition.  See Tennessee Pattern Jury Instructions-Civil § 14.14.

13

22.)  Based on the testimony of Drs. Crenshaw and Varner, the Court finds that Plaintiff has submitted evidence sufficient to create a fact question as to whether the osteoarthritis in her right knee was aggravated by her fall.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment as to liability and damages is DENIED.

SO ORDERED this 30th day of April, 2010.

/s/ JON PHIPPS MCCALLA<br>
CHIEF UNITED STATES DISTRICT JUDGE